**SO ORDERED.**

**SIGNED this 31 day of March, 2015.**



_____
**David M. Warren
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### FAYETTEVILLE DIVISION

IN RE:

SCOTT ROBERT BARTOLO                              CASE NO. 14-03184-5-DMW

DEBTOR                                            CHAPTER 13

### MEMORANDUM OPINION REGARDING
### TRUSTEE'S OBJECTION TO CONFIRMATION AND MOTION TO DISMISS

This matter comes on to be heard upon the Objection to Confirmation of Plan and Motion to Dismiss ("Objection") filed by Joseph A. Bledsoe III, Esq., Chapter 13 Trustee ("Trustee") on August 20, 2014, and the response filed by Scott Robert Bartolo ("Debtor") on September 15, 2014. The court conducted a hearing in Raleigh, North Carolina on November 13, 2014. The Trustee appeared *pro se*, and Robert L. Roland IV, Esq. appeared for the Debtor. At the conclusion of the hearing, the court took the matter under advisement. On December 1, 2014, the court entered an Order[1] allowing William E. Brewer, Jr., Esq. to file a brief on behalf of himself and the National Association of Consumer Bankruptcy Attorneys. Mr. Brewer filed a

---

[1] This Order was docketed in a related case designated as *In re Fields*, Case No. 14-04241-5-DMW. The *Fields* case involves similar issues to this case, and this case, *Fields*, and another related case, *In re Cooper*, Case No. 14-04255-5-DMW, were heard together. Mr. Brewer's Memorandum and the Trustee's response are docketed in *In re Fields*.

Memorandum of Law on December 11, 2014, and the Trustee filed a response on December 22, 2014. Based upon the evidence presented and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.   BACKGROUND.

   1.   The Debtor filed a petition for relief ("Petition") under Chapter 13 of the United States Bankruptcy Code ("Code") on June 4, 2014. Attached to the Petition the Debtor filed Official Form 22C ("Form 22C").

   2.   Form 22C lists the Debtor's annualized current monthly income[2] ("CMI") as $103,697.40, which is above the median family income in North Carolina for the Debtor's household size ($52,419.00).

   3.   As an above-median-income Debtor, the Debtor was required to complete Part IV of Form 22C to determine what deductions should be taken from his CMI to calculate his disposable monthly income.

   4.   The Debtor took the following deductions on Part IV of Form 22C:

   a.   <u>Deduction under Standards of the Internal Revenue Service ("IRS")- Housing (Mortgage/Rent Expense)</u>.  The Debtor deducted $111.00 on Line 25B (Local standards: housing and utilities; mortgage/rent expense) for his residence ("Residence"). This amount represents the difference between the Debtor's contractual monthly mortgage payment ("Mortgage Payment") to SunTrust Mortgage, Inc. ("SunTrust") ($831.00) – which he deducted as a secured debt payment on Line 47b – and the IRS

---

[2] "Current monthly income" is defined as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case." 11 U.S.C. § 101(10A).

2

Local Standard ("Local Standard") for housing in Cumberland County, North Carolina for a household of two ($942.00).

b. <u>Deduction under Standards of the IRS-Housing and Utilities (Non-Mortgage Expense)</u>. The Debtor deducted the sum of $506.00 which is the standard deduction for the Debtor's family of two living in Cumberland County, North Carolina.

c. <u>Deduction under Standards of the IRS-Transportation (Ownership/Lease Expense)</u>. The Debtor deducted $178.68 on Line 28 (Local standards: transportation ownership/lease expense; Vehicle 1). This amount represents the difference between the Debtor's average[3] contractual monthly payment for a 2008 Ford F350 XL ("Vehicle") to Fort Bragg Federal Credit Union ("Fort Bragg") ($338.32) and the Local Standard for transportation ownership/lease expenses in Cumberland County, North Carolina for one vehicle ($517.00). The Vehicle is not leased.

d. <u>Deduction under Standards of the IRS-Transportation (Vehicle Operation/Public Transportation Expense)</u>. The Debtor deducted the amount of $244.00 which is the standard deduction for one vehicle in the South Region which encompasses Cumberland County, North Carolina.

e. <u>Deductions for Debt Payment Including Arrears</u>.

   i. <u>Residence</u>. The Debtor deducted a total of $902.67 on Lines 47b and 48b for the Mortgage Payment to SunTrust. The deduction includes the average contractual monthly payment to SunTrust ($831.00 on Line 47b) and

---

[3] As discussed below, the monthly payment deduction for the Debtor's secured debts is calculated by adding all contractual monthly payments that will become due and dividing that sum by 60, the number of months in the Debtor's applicable commitment period. 11 U.S.C. § 707(b)(2)(A)(iii).

3

1/60th of the amount necessary to cure the pre-petition arrears owed to SunTrust ($71.67 on Line 48b).[4]

        ii.        <u>Vehicle</u>.  The Debtor deducted a total of $351.92 on Lines 47a and 48a for payments to Fort Bragg for its claim secured by the Vehicle.  The deduction includes the average contractual monthly payment to Fort Bragg ($338.32 on Line 47a) and 1/60th of the amount necessary to cure the pre-petition arrears owed to Fort Bragg ($13.60 on Line 48a).[5]

5.        The Trustee argues that when an above-median-income Chapter 13 debtor's average monthly home or vehicle payment is *less* than the related Local Standard, the debtor is only entitled to deduct from his CMI the actual home or vehicle payment.  According to the Trustee, the Debtor should not be allowed to take a Local Standards deduction for his obligation to SunTrust and his payment to Fort Bragg, because those Local Standards are "inapplicable" to him.  The Debtor should only be allowed to deduct his *actual* monthly Mortgage Payment and Vehicle payment, including any arrears – not the full amount listed under the Local Standards.  The Debtor should not be allowed to deduct the difference between his average contractual payment amounts and the Local Standards on Lines 25B and 28.

6.        The Trustee's Objection asserts that by improperly calculating the deductions from his CMI, the Debtor has understated the amount of his disposable income.  The Debtor's Form 22C, as filed, calculates $218.24 in monthly disposable income.  According to the Trustee,

---

[4] Adding in the amount the Debtor deducted on Line 25B, the Debtor took a total of $1,013.67 in deductions related to his mortgage debt to SunTrust, even though the monthly amount, including arrears, that would be paid to SunTrust through the Debtor's Plan is $902.67.  The $1,013.67 deduction translates to a deduction of the full Local Standard amount for housing and utilities; mortgage/rent expense ($942.00) plus the amount to cure the arrearage ($71.67) on Line 48b.  As discussed later, the Debtor is not entitled to the $111.00 deduction on Line 25B.

[5] Adding in the amount the Debtor deducted on Line 28, the Debtor took a total of $530.60 in deductions related to his debt to Fort Bragg, even though the monthly amount, including arrears, that would be paid to Fort Bragg through the Debtor's Plan is $351.92.  The $530.60 deduction translates to a deduction of the full Local Standard amount for transportation ownership/lease expense ($517.00) plus the amount to cure the arrearage ($13.60) on Line 48a.  As discussed later, the Debtor is not entitled to the $178.68 deduction on Line 28.

4

if the Debtor's deductions are adjusted to comply with the Code, the Debtor would have additional disposable monthly income to pay unsecured creditors through his Plan.

7. <u>Summary of Findings</u>.

a. The Trustee is partially correct regarding the payments to SunTrust and Fort Bragg. The Local Standards provided in § 707(b)(2)(A)(ii)(I) apply to the expenses incurred in maintaining housing including rental payments but not to a mortgage as a secured debt. The Local Standards provided in § 707(b)(2)(A)(ii)(I) apply to the expenses incurred in owning a vehicle including lease payments but not to a secured vehicle loan. Debts are specially excluded from the application of § 707(b)(2)(A)(ii)(I) because they are deducted in § 707(b)(2)(A)(iii), thus no payments on secured debts should be addressed in the Local Standards section of Form 22C. Because secured debts are addressed in § 707(b)(2)(A)(iii), the Local Standards are not applicable to those payments, and serve as neither a minimum nor a cap on the deduction a debtor may take for secured debt payments.

b. The calculations under the National and Local Standards are only appropriate when a debtor has an applicable payment that is not in the form of a secured debt (such as a lease payment). Whenever the National and Local Standards are applicable, the Standard operates as a cap on the deduction a debtor may take, and if a trustee can show that actual expenses are lower, a debtor will be limited to the actual amount.

c. Form 22C unfortunately does not comply with § 707.

B.  JURISDICTION.

1.  This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C.  DISCUSSION.

1.  <u>Disposable Income and the Means Test</u>.

a.  If an objection to confirmation is made by a trustee, the court may not confirm the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

b.  The Code defines "disposable income" as the debtor's CMI:[6]

> less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and for [certain] charitable contributions[7]. . . .

11 U.S.C. § 1325(b)(2)(A).

c.  Pursuant to § 1325(b)(3), for an above-median-income debtor, § 707(b)(2) governs the determination of what amounts are "reasonably necessary to be expended"

---

[6] "[C]hild support payments, foster care payments, [and] disability payments for a dependent child made in accordance with applicable nonbankruptcy law[,] to the extent reasonably necessary to be expended for such child," are not included in a debtor's CMI for purposes of calculating monthly disposable income. 11 U.S.C. § 1325(b)(2)

[7] In order to qualify under § 1325(b)(2)(A), a contribution must meet "the definition of 'charitable contribution' under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made." 11 U.S.C. § 1325(b)(2)(A)(ii).

for the maintenance or support of the debtor or the debtor's dependents. 11 U.S.C. § 1325(b)(3).

        d.      Section 707(b)(2) establishes the means test. The means test "supplants the pre-BAPCPA[8] practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 65 (2011). "Congress adopted the means test . . . to help ensure that debtors who *can* pay creditors *do* pay them, [and] repay creditors the maximum they can afford." *Id.* at 64 (internal quotations and citations omitted).

        e.      "Under the means test, a debtor calculating his 'reasonably necessary' expenses is directed to claim allowances for defined living expenses, as well as for secured and priority debt." *Id.* at 65 (citing 11 U.S.C. § 707(b)(2)(A)(ii)-(iv)). Section 707(b)(2)(A)(ii)(I) provides:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards,[9] and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the [IRS] for the area in which the debtor resides. . . . Notwithstanding any other provision of this clause, the monthly expense of the debtor shall not include any payments for debts.

11 U.S.C. § 707(b)(2)(A)(ii)(I).

        f.      The National Standards and Local Standards referenced in § 707(b)(2)(A)(ii)(I) are defined terms, created by the IRS to estimate individual expenses. The National Standards include expenses for clothing, food, housekeeping supplies,

---

[8] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[9] "The National and Local Standards referenced in [11 U.S.C. § 707(b)(2)(A)(ii)(I)] are tables that the IRS prepares listing standardized amounts for basic necessities. The IRS uses the Standards to help calculate taxpayers' ability to pay overdue taxes. *See* 26 U.S.C. § 7122(d)(2). The IRS also prepares supplemental guidelines known as the Collection Financial Standards, which describe how to use the tables and what the amounts listed in them mean." *Ransom*, 562 U.S. at 66.

personal care products and services, and miscellaneous living expenses not included in any other standards or allowable expense items. IRM 5.15.1.8 (Nov. 17, 2014).

    g.    The Local Standards establish standards for housing and transportation expenses based on the debtor's household size and county of residence. The Local Standard housing and utilities deduction is divided into two parts on Form 22C. One covers debtors' "mortgage[10]/rent expense" and the other covers "non-mortgage expenses," which would include "property taxes, necessary maintenance and repair, homeowner's or renter's insurance, homeowner dues and condominium fees" and utilities. IRM 5.15.1.9 (Nov. 17, 2014).

    h.    The Local Standards for transportation include separate allowances for "ownership costs" and vehicle "operating costs." *Ransom*, 562 U.S. at 71-2. Ownership costs include "the cost of a car loan or lease and nothing more." *Id.* at 71. Operating costs "account for vehicle insurance, . . . maintenance, fuel, state and local registration, required inspection, parking fees, tolls, [and the cost of maintaining a] driver's license." *Id*. at 72 (internal citations omitted).

2.    While the Trustee has challenged the Debtor's deductions taken on Lines 25B and 28 for the difference between his average monthly secured debt payments and the Local Standards for expenses of that kind, the real challenge should be to the consideration of the Mortgage Payment to SunTrust and the vehicle loan from Fort Bragg under the Local Standards on Form 22C. Those debts (not expenses) are not *applicable* under the National Standards and Local Standards. Further, those debts are excluded by the language of § 707(b)(2)(A)(ii)(I) that

---

[10] The court is aware that the Local Standards for housing expenses specifically include mortgage payments. The Local Standards were first and foremost created for use by the IRS in determining delinquent taxpayers' liability, not for use in Form 22C. As discussed in further detail, the court finds that despite this language, § 707(b), in applying the Local Standards, makes clear that secured debts (such as a mortgage payment) should be entered on Line 47 only.

8

states "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts" ("Notwithstanding Sentence").

    3.    <u>The "Notwithstanding Sentence"</u>.

        a.    The Notwithstanding Sentence creates confusion among parties seeking to determine whether secured debt should be included in the National and Local Standards deductions from a debtor's CMI.

        b.    The Trustee asserts that the Notwithstanding Sentence limits what may be deducted under the National and Local Standards. Specifically, payments for "unsecured debts" may not be included as other necessary expenses on the means test even if the Internal Revenue Manual ("IRM") provides that payments for "unsecured debts" may be deducted as "Other Expenses." *See* IRM 5.15.1.10 (Nov. 17, 2014).

        c.    The court's "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom*, 562 U.S. at 69 (citation omitted). The plain meaning of the statute should be applied unless "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (citation omitted).

        d.    Reading the language of § 707(b)(2)(A)(ii) in its entirety, the Notwithstanding Sentence works to prevent debtors from including pre-petition debt in the expenses covered by § 707(b)(2)(A)(ii). Consistent with the Trustee's interpretation, this includes debt payments that may otherwise be deductible under the IRM standards. Also, debts that are owed pre-petition for the care of a chronically ill child (§

9

707(b)(2)(A)(ii)(II)), or pre-petition debts owed for a child's schooling (§ 707(b)(2)(A)(ii)(IV)) cannot be tallied and deducted from a debtor's CMI.

      e.      This reading of the Notwithstanding Sentence aligns with the policies behind the Code. In the context of a Chapter 13 bankruptcy, allowing debtors to deduct arrears owed to certain unsecured creditors through the means test would result in those creditors receiving a larger share of distributions than other unsecured creditors. Or, debtors could deduct those amounts on the means test without ever actually making payments to those unsecured creditors through the Plan. The means test in a Chapter 13 is utilized to determine what a debtor can pay going forward. The Notwithstanding Sentence serves as a temporal limit, preventing pre-petition debt repayment from being included in a debtor's deductions.

      f.      The exception to this rule, of course, lies in § 707(b)(2)(A)(iii). Secured debts may be deducted under § 707(b)(2)(A)(iii)(I). The only arrears that may be calculated and deducted on the means test are those described in § 707(b)(2)(A)(iii)(II) – those "necessary for the debtor . . . to maintain possession of" collateral that secures debts.

4.      <u>Applicable Monthly Expenses</u>.

      a.      The *Ransom* court began its analysis by determining whether each expense claimed by the debtor was "applicable." 562 U.S. at 69. "A debtor may claim not all, but only 'applicable' expense amounts listed in the Standards. Whether [a debtor] may claim [a deduction] accordingly turns on whether that expense amount is 'applicable' to him." *Id.*

  b. An expense amount is only applicable "when it is appropriate, relevant, suitable, or fit." *Id.* In sum, "[a] debtor may claim a deduction from a National or Local Standard table . . . if the debtor will incur that kind of expense during the life of the plan." *Id*. at 70. For example, "if a taxpayer has a car, but no car payment only the operating cost portion of the transportation standard is used to figure the allowable transportation expense." IRM 5.15.1.6 (Oct. 2, 2012); *see Ransom*, 562 U.S. at 73.

5. <u>Application of "Applicable" and the Notwithstanding Sentence</u>. Applying "applicable" to the National Standards and Local Standards in this case, the misunderstood assumption is that the home mortgage and the vehicle loans can be considered as an expense. Those obligations are not expenses; they are debts. Even though the Local Standards include "mortgage (including interest)" and "vehicle payment (lease or purchase)" (IRM 5.15.1.7 (Oct. 2, 2012)), the Mortgage Payment and the Vehicle loan are not applicable to the expenses to be deducted because the Notwithstanding Sentence specifically excludes those obligations when determining deductible expenses. The mortgage and vehicle debt is deducted under § 707(b)(2)(A)(iii). If these debts were not excluded from "expenses," then the Debtor could get a double deduction, and the Notwithstanding Sentence would have no meaning.

6. <u>Treatment of Debtor's Deductions for Residence and Vehicle under Local Standards</u>.

  a. <u>Housing (Mortgage/Rent Expense)</u>. This expense is for debtors who rent their homes, and that amount is limited to the Local Standard. If the Debtor were renting his home, he would be able to deduct his rental payment, up to the Local Standard amount. On Line 25B the Debtor has claimed $111.00. This amount cannot be allowed because the Debtor has a secured debt payment for the Residence.

11

  b. <u>Housing and Utilities (Non-Mortgage Expense)</u>.  This portion of the housing expense applies to debtors whether they rent or own.  It includes property taxes (if applicable), necessary maintenance and repair, homeowner's or renters insurance, homeowner dues and condominium fees (if applicable) and utilities. IRM 5.15.1.9 (Nov. 17, 2014).  The utilities include gas, electricity, water, heating oil, bottled gas, trash and garbage collection, wood and other fuels, septic cleaning, cable television, internet services, telephone and cell phone. *Id.*  On Line 25A the Debtor has claimed $506.00 which is the maximum allowance.  The Trustee has the discretion to challenge this amount to determine if the actual expenses are less.

  c. <u>Transportation (Ownership/Lease Expense)</u>.  This expense is for debtors who lease their vehicles, and that amount is limited to the Local Standard.  If the Debtor were leasing the Vehicle, he would be able to deduct his rental payment, up to the Local Standard amount.  On Line 28 the Debtor claims $178.68 for the Vehicle.  This amount is not allowed because the Debtor has a secured debt payment for the Vehicle.

  d. <u>Transportation (Vehicle Operation/Public Transportation Expense)</u>.  This portion of the transportation expense applies to debtors whether they rent or own.  It includes maintenance, fuel, state and local registration, required inspection, parking fees, toll, driver's license and public transportation. IRM 5.15.1.7 (Oct. 2, 2012).  On Line 27A, the Debtor has claimed $244.00 which is the maximum allowance.  The Trustee has the discretion to challenge this amount to determine if the actual expenses are less.

      7.      <u>Deductions Available to Debtor for Residence and Vehicle under § 707(b)(2)(A)(iii)</u>.

      a.      The instructional language on Line 47 of Form 22C aligns with the language of § 707(b)(2)(A)(iii)(I), which provides a formula for calculating the average monthly payment a debtor will make[11] on account of secured debts over the life of a plan.

      b.      The amount that debtors are to enter on Line 47 for each secured debt, pursuant to § 707(b)(2)(A)(iii)(I), is 1/60th "of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the" petition date.

      c.      Line 48, in turn, covers cure payments that a debtor will pay over the life of the plan. Section 707(b)(2)(A)(iii)(II) instructs how to calculate what arrears will be paid to secured creditors. Arrears listed on Line 48 are 1/60th of "payments to secured creditors necessary for the debtor . . . to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts." 11 U.S.C. § 707(b)(2)(A)(iii)(II).

      d.      On Line 47 the Debtor has claimed deductions for his average monthly payments to Fort Bragg and SunTrust. These deductions are appropriate and comply with the Code. The Debtor has also properly listed the cure amounts on Line 48a for Fort Bragg and Line 48b for SunTrust.

      8.      <u>Review of Secured Debt under § 1325(b)(2) and § 707(b)(2)(A)(iii)</u>.

      a.      Although the Local Standards do not apply to secured debt payments, secured debt deductions may be disallowed if the court finds that the collateral is not "for

---

[11] The court recognizes that the § 707(b)(2)(A)(iii)(I) calculation may result in a higher amount being deducted on Form 22C than is actually paid to a creditor each month through a debtor's plan, if the debtor bifurcates the claim under § 506(a) and the creditor is only paid on the secured portion of its claim.

the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A). This consideration is undertaken even before the subordinate issue of the dollar amount for the "amounts reasonably necessary" are addressed.

      b.      In conducting analyses of debtors' means test deductions, some courts have found that the terms of § 707(b)(2)(A)(iii) leave no room for the court to evaluate the necessity of the collateral securing a debt listed on Line 47. *In re Moore*, Case No. 07-11528C-13G, 2008 Bankr. LEXIS 1053, at *9-10 (Bankr. M.D.N.C. April 2, 2008); *In re Musselman*, 379 B.R. 583, 591 (Bankr. E.D.N.C. 2007).

      c.      The court cannot agree with that conclusion. That analysis loses sight of the statutory basis for applying the § 707(b)(2) test to a debtor's expenditures. Section 1325(b)(3) directs courts to utilize § 707(b)(2) to determine what amounts are reasonably necessary to be expended by above-median-income debtor, *as referenced in* § 1325(b)(2).

      d.      Section 1325(b)(2) more fully states that from his CMI, a debtor should subtract "amounts reasonably necessary to be expended *for the maintenance or support of the debtor or a dependent of the debtor*. . . ." 11 U.S.C. 1325(b)(2)(A)(i) (emphasis added). While a reasonable vehicle is typically for the maintenance or support of a debtor, a high-end luxury vehicle would not be. Thus, the court may make a determination whether a secured debt listed on Line 47 of Form 22C is "to be expended for the maintenance or support of the debtor or a dependent of the debtor."

      e.      Moreover, discretionary authority *is* granted in § 707(b)(2)(A)(iii). In *Moore*, the court focused on the fact that only § 707(b)(2)(A)(iii)(II), the provision allowing for deduction of cure payments, contains the limiting language "necessary for the support of the debtor and the debtor's dependents." 2008 Bankr. LEXIS at *9

14

(quoting § 707(b)(2)(A)(iii)(II)). The *Moore* court found that because that language is not included in § 707(b)(2)(A)(iii)(I), a court only has discretion regarding the necessity of collateral for which arrears are to be deducted under the means test. *Id.* at *10.

  f. This interpretation does not align with Congressional intent and would allow a debtor to deduct secured payments for a Lamborghini and a yacht, so long as the debtor was not in arrears on those debts on the petition date. Instead, the language "necessary for the support of the debtor and the debtor's dependents" should be read conjunctively to apply to both § 707(b)(2)(A)(iii)(I) and (II), giving the court discretion to determine the necessity of any collateral for which a debtor will make a secured debt payment through the plan.

  g. In this case, the Trustee did not challenge the Debtor's deduction for payments on the Vehicle, because the average monthly payment is less than the Local Standard. The court finds that the Vehicle is necessary for the maintenance and support of the Debtor, and the full deduction on Line 47a is allowed.

9. <u>Limits to Deductions when National and Local Standards are Applicable</u>.

  a. Although in this case the Local Standards for ownership are not applicable to the Debtor's secured debt payments, the court will review the limits set by the Local Standards with regard to leasing and rental expenses. In addition, certain Local Standards apply regardless of whether a debtor rents or owns real or personal property, and for that reason an analysis of the Local Standard limits is instructive.

  b. Although the *Ransom* court declined to rule on the specific issue of whether a debtor is allowed to deduct the full Local Standard,[12] or is limited to deducting

---

[12] The *Ransom* court noted that the *amicus curiae* parties held opposing views on this subject. 562 U.S. at 75 n.8.

15

his actual expense, *Ransom* is instructive based on its endorsement of the IRM. The Supreme Court stated that, "although the statute does not incorporate the IRS guidelines, courts may consult this material in interpreting the National and Local Standards." 562 U.S. at 72.

    c.    The Supreme Court further stated that as long as the IRS guidelines do not conflict with the Code, courts may consult them in evaluating debtors' deductions. *Id*. Thus, except with regard to payments on debts, which are excepted from § 707(b)(2)(A)(ii) by the Notwithstanding Sentence, the guidelines explained in the IRM should govern this issue.

    d.    The primary purpose of the IRM is to advise on repayment of delinquent taxes; however, the incorporation of the Standards into the Code makes the IRM instructive in determining appropriate deductions on the means test.

    e.    For a vehicle, the IRM allows for a deduction of "the full ownership standard amount, or the amount actually claimed and verified by the taxpayer, whichever is less." IRM 5.15.1.9 (Nov. 17, 2014). For a home, the IRM explains that "Taxpayers are allowed the standard amount for housing and utilities or the amount actually spent, whichever is less. If the amount claimed is more than the total allowed by housing and utilities standards, the taxpayer must provide documentation to substantiate those expenses are necessary living expenses." IRM 5.15.1.9 (Nov. 17, 2014).

    f.    Some debtors may argue that limiting the deduction to the actual amount defeats the objective of uniformity in incorporating the Local Standards into Form 22C. One purpose of BAPCPA was to prevent courts from subjectively analyzing debtors' deductions, and it was out of this concern that the means test standards were formed;

however, limiting a deduction to either the actual amount or the Local Standard (as a cap and not a floor) does not involve any court discretion and does not frustrate the purposes of the means test. *In re Harris*, 522 B.R. 804, 819 n.11 (Bankr. E.D.N.C. 2014).

    g.    Further, this interpretation does not give the court the power to *sua sponte* investigate debtors' deductions under § 707(b)(2)(A)(ii). Only upon a trustee's objection to a debtor deducting the full National or Local Standard amount would the court be required to examine a debtor's actual expenses.

    h.    If a debtor needs to claim more than the standard deduction, § 707 provides for that relief. If a debtor wishes to deduct an additional amount over the National or Local Standard, the debtor must prove that such a deduction is necessary due to "special circumstances" under § 707(b)(2)(B).

    i.    It would be nonsensical to allow above-median debtors unfettered permission to exempt more than their actual expenses while requiring below-median debtors to prove the necessity of their expenses. When the National and Local Standards are applicable, debtors shall be limited to deducting their actual expenses or the applicable Standard, whichever is less.

10.    <u>Problems with Form 22C</u>.

    a.    The Trustee has acknowledged that the Debtor's deductions on Lines 25B and 28 were taken in accordance with the instructions on Form 22C; however, the court finds that Form 22C incorrectly applies the language of § 707(b).

    b.    As referenced above, Section 707(b)(2)(A)(ii)(I) states that "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts."

    c.    Accordingly, lines 25B and 28 refer to amounts claimed for car/housing expense allowances, not payments for debts (to which reference is made in 11 U.S.C. § 707(b)(2)(A)(iii)). Taking deductions for expenses that are already in the form of secured debt would be inconsistent with Congressional intent.

    d.    Clause (iii) refers to the debtor's average monthly payments on secured debts. By listing those secured home and vehicle debts on line 47, debtors account for their actual average secured debt payments on Form 22C. By listing the amounts again on lines 25B and 28 and deducting the difference between those amounts and the Local Standards, a debtor deducts more than the actual average payment (as the Debtor did in this case). To avoid duplication, the secured debts referenced in § 707(b)(2)(A) should only be listed on line 47. If they are listed on Line 47, there is no longer an "applicable" expense related to these debts, and no Local Standard deduction should be taken. *Contra Harris*, 522 B.R. at 812 (holding that debtors may deduct actual secured debt payments under the Local Standards, so long as they do not claim the same deduction on Line 47).

    e.    Allowing debtors to deduct the difference between their secured debt payments and the higher Local Standard produces a senseless result that does not represent Congress' intent that those with the ability to pay their creditors should do so. *See Ransom*, 562 U.S. at 71 (noting that the Supreme Court in *Hamilton v. Lanning*, 560 U.S. 505, 520 (2010) rejected an interpretation of the Code that "'would produce [the] senseless resul[t]' of 'deny[ing] creditors payments that the debtor could easily make'").

    f.    This result appears to be inconsistent with the reading of Form 22C on its face; however, Form 22C has been found to be inconsistent with the Code on numerous occasions. *See in re Wiegand*, 386 B.R. 238, 241-42 (B.A.P. 9th Cir. 2008); *Harris*, 522

B.R. at 815-16; *In re Hoffman*, 511 B.R. 128 (Bankr. D. Minn. 2014); *In re Harkins*, 491 B.R. 518 (Bankr. S.D. Ohio 2013); *In re Sharp*, 394 B.R. 207 (Bankr. C.D. Ill. 2008); *In re Arnold*, 376 B.R. 652 (Bankr. M.D. Tenn. 2007). "The official forms 'shall be construed to be consistent with [the Federal Rules of Bankruptcy Procedure] and the Code.' Fed. R. Bankr. P. 9009." *Harman v. Fink (In re Harman)*, 435 B.R. 596, 599 (8th Cir. BAP 2010). When a form is inconsistent with the Code, the Code controls. *In re Harkins*, 491 B.R. 518, 522 (Bankr. S.D. Ohio 2013).

    g.    To be consistent with the Code, Form 22C requires certain amendments. Lines 25B and 28 (and Line 29) should remove any reference to "mortgage" or "ownership" to be clear that the deduction is only applicable to expenses, not payments on secured debts. These lines would thus be "applicable" if a debtor leased a home or vehicle, and had no secured debt that would fall into the relevant category.

11.    <u>Conclusion</u>. Secured debts may only be deducted pursuant to § 707(b)(2)(A)(iii). The Local Standards are inapplicable to those deductions, and thus the Debtor may not take the deductions on Lines 25B and 28. The Debtor may only take those deductions on Lines 47 and 48 relating to his secured debt payments to SunTrust and Fort Bragg; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.    The Debtor has fourteen days to file an amended Form 22C with deductions in accordance with this Order; and

2.    If not filed within fourteen days, the Trustee's Motion to Dismiss will be granted and this case will be dismissed.

**END OF DOCUMENT**